STATE of Arkansas *v.* Ronald Ladd HENRY

CR 90-164                                          802 S.W.2d 448

Supreme Court of Arkansas
Opinion delivered January 22, 1991
[Rehearing denied February 18, 1991.*]

---

*Holt, C.J., and Dudley and Brown, JJ., would grant rehearing.

*Ron Fields*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellant.

*Johnson & Harrod*, by: *William E. Johnson*, for appellee.

TOM GLAZE, Justice. This case involves the state's petition for review of a decision by the Arkansas Court of Appeals which reversed the trial court's ruling, denying the respondent's motion to suppress marijuana evidence obtained from an arrest and subsequent vehicular search conducted by two Game and Fish Wildlife officers and three deputy sheriffs. The appellate court, relying on Ark. Code Ann. § 12-9-108(a)(1987), and the cases of *Mitchell* v. *State*, 298 Ark. 536, 769 S.W.2d 18 (1989), and *Grable* v. *State*, 298 Ark. 489, 769 S.W.2d 9 (1989), held the contraband should have been suppressed because the officers making the arrest and conducting the search failed to meet the standards and qualifications established by the Arkansas Commission on Law Enforcement Standards and Training. We reverse the court of appeals's decision and affirm the trial court's ruling.

The court of appeals's decision was not published, so we first relate those facts necessary to an understanding and disposition of the suppression issue in this review. The two Game and Fish officers involved made the initial arrest of the respondent and cited him for a hunting-out-of-season violation. Incident to the arrest, they removed from respondent's opened-door vehicle a loaded 30-06 rifle and a camouflage jacket, which were in plain view. The jacket contained rifle shells and a bag of green substance which appeared, and later proved, to be marijuana. The wildlife officers then summoned the Ashley County Sheriff's

Department, and upon their arrival, three deputies conducted a further search of respondent's vehicle that revealed additional marijuana. The record reflects that, at the time of respondent's arrest, none of the five officers met the minimum employment standards established by the Arkansas Commission on Law Enforcement Standards and Training. *See* Regulation 1002, Minimum Standards for Employment or Appointment (1990). The state, by information, charged respondent with possession of a controlled substance with intent to deliver. Respondent entered a conditional guilty plea pursuant to A.R.Cr.P. Rule 24.3(b), after which the trial court denied his motion to suppress and sentenced him to ten years imprisonment.

Because respondent was charged with a valid charging instrument, he does not argue on appeal that the felony charge should be dismissed. *See Renshaw* v. *State*, 303 Ark. 244, 795 S.W.2d 925 (1990); *Huls* v. *State*, 301 Ark. 572, 785 S.W.2d 467 (1990). Instead, his contention, and the appellate court's decision, rests upon § 12-9-108(a) which in effect provides that a person who fails to meet the minimum standards required by the Arkansas Commission on Law Enforcement Standards and Training shall not take any official action as a police officer and "any action taken shall be held as invalid." In brief, the respondent argues that the officers involved in this incident did not fully comply with the Commission's minimum standards; therefore, the officers' seizure of respondent's contraband was invalid under state law. Our recent decision in *Moore* v. *State*, 303 Ark. 514, 798 S.W.2d 87 (1990), and the rationale upon which it is premised, requires us to reject the respondent's argument.[1]

In *Moore*, unlike the instant case, there were fully qualified officers involved in the search made subsequent to Moore's arrest, which had been effected by unqualified officers or ones not meeting the Commission's minimum standards. We indicated that, under § 12-9-108(a), the actions of unqualified officers did not invalidate actions taken by qualified officers *or* suggest that an exclusionary rule should be applied. In refusing to

---

[1] We note that the Arkansas Court of Appeals did not have the benefit of the *Moore* case when this case was before it for consideration and decision.

apply the exclusionary rule, this court's reasoning was not limited to the mere fact that there were qualified officers involved in the search, but instead the court reasoned and held as follows:

> The exclusionary rule is designed to deter unlawful police conduct. It compels respect for the Fourth Amendment by removing the incentive to disregard it. *Elkins* v. *United States*, 364 U.S. 206, 217 (1960). Here, we are not dealing with unlawful police conduct which constitutes a violation of the Fourth Amendment and, accordingly, we are not compelled by federal law to apply the rule. Still, we may apply it as a matter of state law if we deem it proper. *See State* v. *Shepherd*, 303 Ark. 447, 798 S.W.2d 45 (1990). In this case, we do not think it is fitting to apply the exclusionary rule on state grounds. The goal of the statute at issue is to compel police department administrators to check the backgrounds of those seeking to become officers, and to hire only psychologically qualified persons to serve as policemen. It is a statute which deals with standards for employment. It is not a statute which deals with police conduct. The goal of this statute and the goal of the exclusionary rule are different. Therefore, we decline to apply the exclusionary rule on state grounds. *See Cherry* v. *State*, 302 Ark. 462, 791 S.W.2d 354 (1990).

Consistent with our decision in *Moore*, we decline to read § 12-9-108(a) as requiring the application of the exclusionary rule when, as here, no police misconduct has occurred.

While the court of appeals did not reach the issue nor does the state brief it, the respondent, citing Ark. Code Ann. § 15-41-203 (1987), also contends the Game and Fish officers were not authorized by law to search vehicles. We find no merit to this argument.

■ Clearly, Game and Fish officers are empowered to make arrests for violation of the game and fish laws. Ark. Const. amend. 35, § 8. In making such arrests, those officers may also conduct a search of the person or property of the accused (including his vehicle) in accordance with A.R.Cr.P. Rule 12. *See* in particular A.R.Cr.P. Rules 12.1 and 12.4. Here, the wildlife officers witnessed a hunting violation by the respondent, and the rifle and hunting jacket, in obvious view in respondent's

truck, were connected with the offense with which respondent was arrested and charged.

For the reasons given above, we reverse the court of appeals's decision, thereby reinstating the trial court's ruling denying the respondent's motion to suppress.

HOLT, C.J., DUDLEY and BROWN, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. Ark. Code Ann. § 12-9-108(a) (1987) provides that any action taken by a police officer who fails to meet the minimum standards required by the Arkansas Commission on Law Enforcement Standards and Training "shall be held as invalid." None of the police officers involved in this case met the minimum standards and, just as the statute mandates, I would hold their seizure of evidence was "invalid."

The majority opinion, in circumventing the unmistakable language of the statute, cites our recent case of *Moore v. State*, 303 Ark. 514, 798 S.W.2d 87 (1990). In that case a non-qualified officer arrested the defendant for a traffic violation. He did nothing else. All subsequent actions were taken by qualified officers. Those subsequent actions by qualified officers resulted in obtaining evidence of five felonies. The trial court admitted the evidence in the trial for those felonies. Appellant appealed and argued that the evidence gathered by the qualified officers should be excluded under the *Wong Sun* or "fruit of the poisonous tree" doctrine. We refused to apply the exclusionary rule to the action of the qualified officers because (1) there had not been a violation of the Fourth Amendment and (2) the statute neither states nor implies that subsequent actions taken by qualified officers should be held "invalid."

In this case all actions were taken by non-qualified officers. There were no subsequent actions taken by qualified officers. There is no *Wong Sun* or "fruit of the poisonous tree" argument. The citation of *Moore* is wholly inapposite. The result of the inapposite citing of *Moore* results in the majority's holding that a non-qualified officer's actions are valid. That is in direct contravention of the statute. Accordingly, I dissent.

HOLT, C.J., and BROWN, J., join in this dissent.