Charles MARTIN *v.* STATE of Arkansas

CR 96-526                                           936 S.W.2d 75

Supreme Court of Arkansas
Opinion delivered January 21, 1997

*Robert Meurer*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. The court of appeals certified this appeal to us because it involves the interpretation and construction of Ark. Code Ann. § 12-9-303(a) and (b) (Repl. 1995), as that statute establishes the scope of an auxiliary law enforcement officer's authority.

Factually, this case arises from auxiliary officer Danny Hill's observation of appellant Charles Martin driving his pickup truck too fast around a curve and causing the truck to slide into a telephone pole, breaking the pole in half. Hill was not on duty at the time, but he radioed the sheriff's office and told the office dis-

patcher about the accident, and advised the dispatcher that he would check to see if anyone was hurt. Hill then saw the vehicle backup and drive off. He radioed the sheriff's office, again, contacting Deputy Sheriff Roy Smith, who instructed Hill to follow the truck and not let it get away. Hill followed Martin's vehicle until it pulled into a driveway. When Hill pulled in behind Martin's pickup, Martin departed his truck and started to "take off," but Hill held him until Deputy Smith arrived on the scene.

Martin was arrested and charged with (1) refusing to submit to a breathalyzer test, (2) DWI second offense, and (3) leaving the scene of an accident. Martin was convicted in municipal court, and he appealed to circuit court where he moved to suppress the evidence, arguing his arrest by Hill was unlawful because Hill was not acting under legal authority. The circuit court denied Martin's motion, and afterwards, he was convicted of all three charges. On appeal, his sole point for reversal is that the trial court erred in denying his motion to suppress and in finding Hill was validly performing an "assigned duty" at the time of Martin's arrest.

Martin relies upon § 12-9-303 which in relevant part provides as follows:

> (a) An auxiliary law enforcement officer shall have the authority of a police officer as set forth by statutes of this state when the auxiliary law enforcement officer is performing an assigned duty and is under direct supervision of a full-time certified law enforcement officer.
>
> (b) When not performing an assigned duty and when not working under the direct supervision of a full-time certified law enforcement officer, an auxiliary law enforcement officer shall have no authority other than that of a private citizen.

Martin does not contend Hill was not acting under the direct supervision of a full-time law enforcement officer. Instead, relying largely on provision (b) above, Martin argues Hill was not on duty or patrol when he observed Martin's accident; nor was he on an assigned duty as an auxiliary police officer. Martin further points to Hill's testimony where Hill conceded that he (and his wife) was en route to a restaurant, was not in uniform or in a police car, and had not previously been assigned to do anything as

a police officer. Martin argues that, because Hill was not performing an assigned duty when he observed Martin's actions, Hill had no more authority than a private citizen who cannot make a misdemeanor arrest, such as the one made of Martin. *See Brewer v. State*, 286 Ark. 1, 688 S.W.2d 736 (1986).

In reading provisions (a) and (b) above, we find no language that requires that the auxiliary officer be "on duty" before he or she could be authorized and activated to perform law enforcement functions. Both Hill and Deputy Sheriff Smith testified that auxiliary officers for the White County Sheriff's Office are not assigned regular work hours, but instead, are required to work at least sixteen hours a month and report into the supervisory officer whenever they can work and receive assignments. Smith stated that auxiliary officers can be called out at any time in unusual situations. In fact, it is these type of situations, we believe, the General Assembly had in mind when it provided for auxiliary officers to assist the primary police force in Arkansas communities.

Here, supervising officer Smith specifically assigned Hill the duty to follow Martin's pickup after Hill saw the pickup leave the scene of the accident. Hill followed the assignment that Smith gave him until Smith arrived at the destination where Hill had intercepted and was holding Martin. Because we conclude auxiliary officer Hill's actions were in compliance with § 12-9-303(a) and (b), we affirm.